# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 19, 2013 Session

## RYNE W. BROWN v. CATHERINE L. BROWN, Trustee, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-06-1854      Walter L. Evans, Chancellor

### No. W2012-02301-COA-R3-CV - Filed April 16, 2013

This case involves a trust. In a previous appeal, this Court remanded for the appointment of a corporate co-trustee as specifically required by the terms of the trust. Thereafter, the defendant existing trustee, who is also a beneficiary, unilaterally appointed a corporate co-trustee and then sought to have the trial court "ratify" her appointment. The plaintiff beneficiary challenged the appointment, claiming that the trustee was not authorized to unilaterally appoint a corporate co-trustee and arguing that the corporate co-trustee who was chosen did not meet the qualifications listed in the trust agreement. After hearing some testimony about the proposed co-trustee, the trial court decided that the plaintiff beneficiary lacked standing to participate in the selection or ratification of a corporate co-trustee. The trial court then granted the defendant trustee's motion to ratify her appointment of the co-trustee. The plaintiff beneficiary appeals. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Ryne W. Brown

Lynn W. Thompson, G. Patrick Arnoult, Memphis, Tennessee, for the appellees, Catherine L. Brown, Trustee, Catherine L. Brown, individually, Cathleen Lucille Brown Sibley, Graham W. Sibley, Hilary E. Sibley Murphy, Aiden Patrick Murphy, a minor, Ashley Mills Sibley, and Alexander Mills Sibley

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

In 1992, husband and wife Roland W. and Catherine L. Brown executed and funded the "Roland and Catherine Brown Living Trust." The trust agreement was amendable and revocable while both Roland and Catherine Brown were living, and the two served as joint trustees of the trust. The trust agreement provided that, upon the death of either Trustmaker, Roland or Catherine, the trust agreement would no longer be subject to amendment or revocation. On February 13, 1999, Roland Brown died. Under the terms of the trust agreement, at the death of Roland, the assets of the Roland and Catherine Brown Living Trust were divided into two trusts: the Brown Marital Trust[2] and the Brown Family Trust.

Pursuant to the trust agreement, the death of Roland activated the appointment of Union Planters Bank (referred to hereinafter as its successor, "Regions Bank") to serve with Catherine Brown as co-trustees of both the Brown Marital Trust and the Brown Family Trust. Regions Bank did not accept its designation to serve as co-trustee of either trust. Catherine Brown continued to serve as trustee without a co-trustee for some time. The trust agreement provided that when either Roland or Catherine was serving jointly with another trustee, either Roland or Catherine could act for and conduct business on behalf of the trust as trustee without the consent of any other trustee. Nevertheless, the trust also provided that if either Trustmaker named a corporate co-trustee to serve, and the corporate co-trustee was unable to serve for any reason, the corporate co-trustee had to be replaced with another corporate co-trustee.

Pursuant to the terms of the trust agreement, all of the net *income* from the Family Trust was to be paid to or applied for the benefit of the surviving Trustmaker, Catherine. She also had the right to receive distributions of *principal* within certain calculable limits each year. In addition, the trust agreement provided that the trustee could make distributions, to or for the benefit of the surviving Trustmaker and the Trustmakers' descendants, of as much

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The terms of the Marital Trust are not relevant to this appeal.

-2-

of the principal of the Family Trust as the trustee, in its sole and absolute discretion, considered necessary for their education, health, maintenance, and support.

The trust agreement provided that the Family Trust would terminate at the death of the surviving Trustmaker. It also provided that the surviving Trustmaker had the limited testamentary power to appoint all or any portion of the remaining principal and undistributed net income of the Family Trust, as it existed at the surviving Trustmaker's death, to or for the benefit of the Trustmakers' descendants by a will or living trust agreement. Such distribution could be made among the Trustmakers' descendants in equal or unequal amounts, either outright or in trust, as the surviving Trustmaker determined. To the extent that the surviving Trustmaker did not exercise this limited power of appointment, then upon the death of the surviving Trustmaker, the remainder of the Family Trust would be administered as provided in additional articles of the trust agreement. Pursuant to those provisions, the Trustmakers' two children, Cathleen and Ryne, would each receive equal shares of the remaining trust property, to be distributed according to a schedule set forth in the trust agreement.

In 2006, Ryne Brown, the son of Roland and Catherine Brown, filed a complaint for declaratory judgment in the Chancery Court of Shelby County. He named as defendants Catherine Brown, in her individual capacity and as trustee, and several other descendants of Roland and Catherine Brown who were potential beneficiaries under the trust agreement.[3] Ryne essentially contended that he was a current beneficiary of the Brown Family Trust, and, consequently, presently entitled to income and principal distributions. He claimed a fifty percent interest in the assets of the Family Trust. Ryne raised numerous sub-issues that all stemmed from this contention and generally related to the management of the trust in contradiction to his alleged status as a beneficiary. The trial court held that Ryne had no "discernible interest" in the Family Trust until the death of his mother, and only then if any trust property remained.

On appeal to this Court, in *Ryne W. Brown v. Catherine L. Brown, Trustee, et al.*, No. W2009-02264-COA-R3-CV, 2011 WL 441266 (Tenn. Ct. App. Feb. 9, 2011), we first addressed Ryne's contention that he was a beneficiary presently entitled to distributions from the trust. After quoting several relevant provisions of the trust agreement, we summarized their effect as follows:

Pursuant to Article Ten, Section One, the surviving Trustmaker, [Catherine],

---

[3] Some additional defendants were dismissed but are not at issue on appeal.

has the right to all of the net income of the Brown Family Trust. Article Ten, Section Two gives [Catherine] the right to withdraw principal within certain specific standards. Article Ten, Section Three provides that the Trustee may make discretionary distributions of principal for the health, education, maintenance, and support of [Catherine] and her descendants (including Ryne Brown), with a preference for distributions to [Catherine]. Lastly, Article Ten, Section Five also gives [Catherine] a limited power of appointment by which she can distribute any remaining assets of the trust among her descendants by testamentary instrument.

Under these provisions, Ryne Brown is not a mandatory beneficiary of either the income or principal of the Brown Family Trust. Rather, his only present interest is at the discretion of the Trustee (for distributions of principal for his health, education, maintenance, and support) or the surviving Trustmaker (as a recipient of her limited power of appointment). . . . Thus, it is only upon the death of [Catherine], and only if any trust property remains in the Brown Family Trust at that time, that the provisions of Article Twelve [giving Ryne a one-half interest] come into effect. . . . [A]s the trial court correctly noted, "[i]t is conceivable . . . that [Catherine] could, in satisfying the requirements of Article Ten, expend and use up The Family Trust to the extent that there would be nothing left to divide to [Ryne] and [Cathleen] under Article Twelve." While [Ryne] is a beneficiary under Article Twelve, that article only comes into effect at the death of [Catherine] as a way of distributing any remaining trust property. Thus, [Ryne]'s only present interest in the Brown Family Trust is as a discretionary beneficiary of the principal. This is the interpretation that the trial court gave the trust agreement, and we affirm the trial court's judgment in this respect.

*Id.* at \*4-5.

Next, we addressed Ryne's assertion that the trust agreement required a corporate trustee to serve alongside Catherine. We disagreed with the trial court's conclusion that a corporate co-trustee was not mandatory. The trust agreement specifically stated that "if either Trustmaker has named [a] corporate Trustee to serve, such corporate Trustee, if unable to serve for any reason, must be replaced with another corporate Trustee." It was undisputed that Regions Bank was named in the trust agreement to act as corporate trustee upon the death of Roland Brown, and that Regions Bank did not accept its appointment and never served as corporate trustee. Likewise, it was undisputed that, in 2008, during the trial court proceedings, Catherine had named another entity as corporate trustee, and it no longer served in that capacity. As a result, there was not a corporate trustee and Catherine was the sole trustee. In short, Catherine had named a corporate trustee, and for whatever reason, such trustee was unable to serve. Because of the plain terms of the trust agreement, we held that

-4-

a successor corporate trustee must be appointed. We went on to state:

> While it is clear that the trust agreement mandates the appointment of a replacement corporate trustee, it does not provide a procedure for doing so. . . . The trust agreement is [] silent as to how a corporate trustee should be appointed or who should have a role in deciding such matters. Nonetheless, because the trust agreement clearly mandates that a corporate Trustee be named as a replacement, we reverse this part of the trial court's judgment and remand to the trial court for the limited purpose of appointing a corporate trustee in a manner consistent with the terms of the trust.

*Id.* at *6.

Finally, we addressed numerous issues presented by Ryne in which he alleged that Catherine breached her fiduciary duties in her role as trustee, with the following explanation:

> [Ryne] also alleges that [Catherine] breached her fiduciary duties in her role as trustee. These allegations relate to how the trust property was distributed, the extent of notice, disclosures, and accountings, and the failure to maintain a corporate trustee. The trial court determined that, pursuant to the terms of the trust agreement, [Ryne] did not prove that the trustee breached any duty that was owed to him. We agree with the trial court's assessment. We further note that, even if [Ryne] had proven a technical violation of the terms of the trust, because he was merely a discretionary beneficiary, he could not prove that he suffered any loss as a result of the acts of the trustee. Thus, where [Ryne] cannot prove any loss, we will not hold the trustee liable for an alleged technical violation. See *Oram v. Fitzpatrick*, No. 85-307-II, 1986 WL 6061, at *3 (Tenn. Ct. App. May 29, 1986). This is particularly relevant because we remand for the appointment of a corporate trustee. The trust agreement requires that a corporate trustee be appointed, and we cannot ignore this plain directive. However, the absence of a corporate trustee does not prove that [Catherine] breached her fiduciary duty as trustee with regards to [Ryne]. The trust provided that, as a Trustmaker, whenever [Catherine] served jointly with another trustee, she was entitled to act without the consent of the other trustee. Thus, any decisions that [Catherine] made while serving as sole trustee were within the discretion granted to her by the trust agreement. Furthermore, because [Ryne]'s interest in the trust was discretionary only, and could be divested at the sole discretion of [Catherine], he cannot show that he suffered any loss as a result of her actions as trustee. *See id.* Consequently, while we remand for the appointment of a corporate trustee, we affirm the trial court's judgment that no breach of fiduciary duty occurred. All other issues are

pretermitted.
*Id.* (footnote omitted).

After this Court's memorandum opinion was issued on February 9, 2011, Ryne filed an application for permission to appeal to the Tennessee Supreme Court. The Tennessee Supreme Court ultimately denied the application for permission to appeal on July 15, 2011. On September 2, 2011, Catherine Brown filed, in the trial court, a "Notice of Appointment of Corporate Co-Trustee." According to this "Notice," Catherine had appointed the Forgey Private Family Trust Co., Inc. ("the Forgey Trust Company") as corporate co-trustee of the trust on April 13, 2011 (while the application for permission to appeal was pending). She claimed that she made such an appointment "pursuant to" the order of the Court of Appeals "and in accordance with" the terms of the trust agreement. The Notice further stated that the Forgey Trust Company accepted its appointment on April 13, 2011, and had been serving as corporate co-trustee since that date. Attached to the Notice was an "Affidavit of Appointment" signed by Catherine, in which she stated that she understood that the Court of Appeals had "mandated that I have a Corporate Trustee," that she "agree[d] to the mandate," and that she appointed the Forgey Trust Company to serve as the corporate trustee.

In January 2012, Catherine filed a "Motion to Ratify Appointment of Corporate Trustee," which was joined by the other descendants of the Trustmakers who were named as defendants in Ryne's original complaint. The defendants asked the trial court to set a hearing on the motion to ratify the appointment of corporate co-trustee, with notice of the hearing provided to all parties, and to issue an order ratifying the appointment of the Forgey Trust Company as the corporate co-trustee of the trust.

Ryne filed a response to the motion in which he objected to Catherine's "unilateral" appointment of a corporate co-trustee and also argued that the Forgey Trust Company was not qualified to serve as corporate co-trustee "for a whole host of reasons." He claimed that the Forgey Trust Company did not meet several of the qualifications for corporate trustees set forth in the terms of the trust itself. The trust agreement provided in Article 15, entitled "The Resignation, Replacement, and Succession of Our Trustees," Section 4, entitled "Corporate Fiduciaries," the following statement:

> Any corporate fiduciary named in this trust agreement or appointed by a court of competent jurisdiction as a Trustee must be a corporation organized under the laws of the United States or of any state which is (1) qualified to do business, and to exercise trust powers, in the State of Tennessee or in any other state, (2) has an active personal trust department, and (3) has at least $200,000,000 in trust assets over which investment authority is held. Such Trustee may not have entered into any agreement, written or oral, express or

-6-

implied, with any of the beneficiaries of any of the trusts herein created either as to the manner, amount, or proportion in which the Trustee after appointment will distribute to or apply for the benefit of any such beneficiaries the income and/or principal of any such trusts or as to the manner in which the Trustee will administer any of such trusts. The appointment of a corporation as trustee in which the stockholdings of any of such trusts or of any of the beneficiaries of such trusts are significant from the viewpoint of the voting control thereof if [sic] specifically prohibited. . . .

Ryne argued that the Forgey Trust Company did not meet these qualifications because it was undisputed that it was not incorporated until August 30, 2011, some four months after it was allegedly appointed by Catherine in April 2011, and it was not registered to do business in the State of Tennessee until November 14, 2011. Ryne alleged that the defendants had failed to provide him with "ANY information" about the Forgey Trust Company despite his numerous requests, but he said it appeared that the Forgey Trust Company did not have investment authority over $200 million in trust assets. Ryne further claimed that the defendants had not produced any information about the Forgey Trust Company's officers, executives, and managers, and he asserted that such information should be considered by the court in order to determine if conflicts of interest existed.

The trial court held a hearing on the parties' motions on February 16, 2012. At the outset, Catherine's attorney argued that under the terms of the original trust agreement, "only Catherine" had authority to appoint a corporate co-trustee during her lifetime. Catherine's attorney also argued that Ryne had no standing to participate in the proceedings for the appointment of a co-trustee because he had "absolutely no interest" in the trust assets until such time as Catherine died, and only then if trust assets remained. Her attorney claimed that Ryne had "no input, none whatsoever" in the administration of the trust or the selection of a corporate co-trustee.

Regarding Ryne's assertion that the Forgey Trust Company failed to meet the qualifications of Article 15 Section 4, Catherine's attorney argued that the aforementioned Section was inapplicable to the appointment of the Forgey Trust Company. Section 4 began by stating, "Any corporate fiduciary *named in this trust agreement or appointed by a court* of competent jurisdiction as a Trustee must be . . . " Citing this phrase, counsel for Catherine argued that the Forgey Trust Company was appointed by Catherine; it was not named in the trust agreement or appointed by a court. Therefore, she argued, the $200 million asset requirement was inapplicable.[4]

---

[4] In response to a question by the trial judge, the attorney for Catherine estimated that the Forgey
(continued...)

Ryne's attorney insisted that the trial court was required to appoint a corporate co-trustee, and that it was improper for Catherine to have done so on her own. He also argued that because Ryne was a contingent beneficiary of the trust, he had standing to participate in the proceedings.

When William Forgey, of the Forgey Trust Company, was called to testify, counsel for Ryne objected and argued that he should be permitted to conduct limited discovery and depose Mr. Forgey and perhaps Catherine prior to any testimony before the court. He specifically requested a continuance of the hearing on that basis. The trial court initially denied the request and permitted Catherine's attorney to question Mr. Forgey. Mr. Forgey testified that he met with Catherine in April 2011 and agreed to work with her as co-trustee. Mr. Forgey, individually, had many years of relevant experience dealing with trusts, and he agreed to form a corporation for the sole purpose of serving as co-trustee of the Brown Family Trust. Mr. Forgey testified that he currently had other clients but only in his capacity as an individual. He testified that he and Catherine were presently meeting on a quarterly basis and had a good working relationship. When Mr. Forgey was questioned about his serving as co-trustee upon appointment by Catherine in April 2011, before he formed a legal corporation, Catherine's attorney argued that Mr. Forgey was not "officially" the co-trustee until his corporation was registered to do business in Tennessee in November. Ryne's counsel attempted to question Mr. Forgey about payments that he received for his services prior to that time, and the trial court sustained Catherine's objection to such testimony on the basis that Ryne had no right to such information. After some argument by the attorneys regarding when Mr. Forgey began acting as co-trustee, the trial court stated:

> Let's cut this short. The Court is going to rule that Ryne Brown does not have standing to raise the issue regarding the conduct of the trust prior to him having a vested interest in the trust asset. Let's move on.

The Court stated that it would allow Ryne's attorney to continue to question Mr. Forgey in order to "enlighten the Court as to whether or not he is competent to serve as co-trustee." However, such questioning would be limited to whether Mr. Forgey, or more specifically, the Forgey Trust Company, was *presently* qualified to serve as co-trustee. The trial judge expressed his opinion that the appointment of a co-trustee was not official until confirmed by the court, and therefore, the only relevant issue was whether the Forgey Trust Company was presently a qualified legal entity, fully capable of carrying out the duties and responsibilities of co-trustee. Upon further questioning, the trial judge sustained another

---

[4](...continued)

Trust Company had investment authority over about $900,000 in assets. However, no evidence was presented regarding this issue.

objection to testimony about the amount Mr. Forgey had been paid by the trust. After some questions about the limits of Mr. Forgey's errors and omissions insurance coverage, counsel for Ryne asked how much money he was managing on behalf of the Family Trust. Mr. Forgey refused to answer the question and the trial court refused to direct him to answer. After referencing an apparent time constraint, the trial court continued the matter to another date and commented that doing so would allow Ryne's attorney "more time to prepare for the hearing." The judge indicated that Ryne's attorney could depose Mr. Forgey and explore subjects such as what services he anticipated rendering as co-trustee, how his fee would be determined, and how it would be paid, but, he said that Ryne was not entitled to information about the assets of the trust or the amounts paid into or out of the trust.

After the hearing was continued, but prior to the next hearing, the defendants filed a motion in limine seeking an order preventing Ryne from participating in the court's selection or ratification of a co-trustee, for lack of standing. The defendants argued that the previous opinion of the Court of Appeals established that because Ryne was only a discretionary beneficiary, he could suffer no loss or injury due to Catherine's actions. The defendants also attached to their motion an amendment to a separate trust, the Catherine L. Brown Revocable Living Trust, which amendment had been executed by Catherine the previous year. The amendment stated:

> I specifically exercise the limited power of appointment granted to me under Section 5 of Article Ten of the ROLAND AND CATHERINE BROWN LIVING TRUST dated November 25, 1992, by appointing all of the corpus (principal plus undistributed or accrued income) contained in the designated Brown Family Trust at the time of my death, to be distributed to Cathleen Lucille Brown Sibley, and if Cathleen Lucille Brown Sibley should predecease me, or die before the complete distribution of these assets, then the remaining assets shall be distributed in trust in equal shares to the trustee of the trusts established for the then living children of Cathleen Lucille Brown Sibley. . . .

The defendants filed a supporting memorandum, arguing that because Catherine exercised the limited power of appointment granted to her by the original trust agreement, and appointed all assets which remained in the Brown Family Trust at the time of her death to her daughter, then Ryne was no longer a residual beneficiary of the Brown Family Trust. Thus, they insisted that Ryne had no standing to participate in the proceedings, and he should not be permitted to present evidence, cross-examine witnesses, or take discovery.

Ryne argued in response that the previous opinion of the Court of Appeals did not hold that he lacked standing to participate in the proceedings. He claimed that his interest as a discretionary or contingent beneficiary was a sufficient basis for standing to participate

in the proceedings. Ryne also submitted his own motion to appoint a corporate co-trustee, suggesting that the court appoint Bank of America, Charles Schwab, or USAA.

At the next hearing before the trial court, Ryne's attorney reiterated his request to conduct discovery and claimed that he had been prevented from deposing Mr. Forgey by the defendants' failure to provide dates for a deposition. Counsel for the defendants argued that because Catherine had exercised the limited power of appointment, Ryne was no longer a beneficiary "under any circumstance" and had "no interest in the trust whatsoever," and therefore he lacked standing. The trial court denied Ryne's motions and heard no additional evidence. It entered an order stating that it was appropriate to appoint the Forgey Trust Company as corporate co-trustee. The trial court noted this Court's previous holding that Ryne was only a discretionary beneficiary whose interest could be divested by Catherine, and therefore, the trial court found that Ryne "cannot show that he suffered a loss." The court further noted the fact that Catherine had exercised the limited power of appointment, so that Ryne was no longer a residuary beneficiary under the trust, and therefore, the court held, "Ryne Brown does not have standing to participate in the selection or ratification of a corporate co-trustee of the Brown Family Trust." Ryne timely filed a notice of appeal.

## II.  ISSUES PRESENTED

Ryne presents numerous issues and sub-issues on appeal. We have re-worded the determinative issues, as we perceive them, as follows:

1.  Whether the trial court erred by holding that Ryne had no standing to participate in the proceedings because:
    a.  Ryne could not be "disinherited" from the irrevocable Brown Family Trust;
    b.  Ryne has a sufficient interest as a trust beneficiary; and
    c.  Ryne has participated in this matter since 2006 and the defendants waived the issue of standing; and
2.  Whether the trial court failed to comply with the previous directive of this Court by:
    a.  naming a corporate co-trustee who failed to meet the qualifications set forth in the trust agreement;
    b.  ratifying Catherine's unilateral appointment of a corporate co-trustee; and
    c.  failing to consider Ryne's proposed alternative corporate trustees.

For the following reasons, we reverse and remand for further proceedings consistent with this opinion.[5]

---

[5]  Ryne raises one additional issue on appeal regarding the effect of alleged testimony by Catherine
(continued...)

-10-

## III. STANDARD OF REVIEW

"Trust instruments are interpreted similarly to contracts, deeds, or wills." *In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005) (citing *Marks v. S. Trust Co.*, 203 Tenn. 200, 310 S.W.2d 435, 437-38 (Tenn. 1958)). Consequently, the interpretation of a trust agreement is a question of law for the court. *Holder v. First Tennessee Bank N.A. Memphis*, No. W1998-00890-COA-R3-CV, 2000 WL 349727, at *3 (Tenn. Ct. App. Mar. 31, 2000). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. Standing

### 1. Catherine's Exercise of the Limited Power of Appointment

We will begin by considering the issue of standing. The trial court's ruling that Ryne lacked standing was based, at least in part, on its conclusion that Ryne was no longer a residual beneficiary of the trust due to the fact that Catherine exercised the limited power of appointment. Ryne argues that Catherine was not authorized to take such action.

The trust agreement provided, in pertinent part:

Section 5. Limited Power of Appointment
The surviving Trustmaker shall have the limited testamentary power to appoint to or for the benefit of our descendants, either by a valid last will and testament or by a valid living trust agreement executed by the surviving Trustmaker, all or any portion of the principal and any accrued and undistributed net income of the Family Trust as it exists at the surviving Trustmaker's death.

The surviving Trustmaker may make distributions among our descendants in equal or unequal amounts, and on such terms and conditions, either outright

[5](...continued)
during a 2008 deposition which, according to Ryne, concerned her "ownership" of trust assets. He does not point to any location in the record where he brought this deposition testimony to the trial court's attention or sought relief based upon it. Therefore, we find the issue waived. Moreover, as we stated in our previous opinion, the trust agreement is not ambiguous, so we will not consider the testimony of the parties as to their interpretation of the trust. *Brown*, 2011 WL 441266, at *3.

or in trust, as the surviving Trustmaker shall determine.

As this Court explained in our previous opinion in this matter, this Section of the trust agreement gave Catherine "a limited power of appointment by which she can distribute any remaining assets of the trust among her descendants by testamentary instrument." ***Brown***, 2011 WL 441266, at *4. This is precisely what Catherine did after our previous opinion was issued. In August 2011, Catherine executed an amendment to the Catherine L. Brown Revocable Living Trust providing that she was "specifically exercis[ing] the limited power of appointment granted to me under Section 5 of Article Ten of the ROLAND AND CATHERINE BROWN LIVING TRUST" and "appointing all of the corpus (principal plus undistributed or accrued income) contained in the designated Brown Family Trust at the time of my death, to be distributed to Cathleen[.]" The original trust agreement specifically provided that Catherine could exercise the limited power of appointment "either by a valid last will and testament or by a valid living trust agreement executed by the surviving Trustmaker[.]" Ryne does not challenge the validity of the living trust agreement executed by Catherine. He simply argues that because the original trust agreement became irrevocable after Roland's death, he could not be "disinherited." We disagree. The original trust agreement authorized Catherine to distribute any remaining assets of the trust among her descendants, "in equal or unequal amounts, and on such terms and conditions, either outright or in trust, as the surviving Trustmaker [Catherine] shall determine." Catherine did not impermissibly alter the trust agreement when she exercised a right specifically granted to her by that agreement. This issue is without merit.

## 2. Ryne's Interest as a Beneficiary

Next, we will consider whether Ryne's interest in the trust was eliminated by Catherine's exercise of the limited power of appointment. As previously noted, during the trial court proceedings, counsel for the defendants argued that once Catherine exercised the limited power of appointment providing that Cathleen would receive any remaining trust assets upon Catherine's death, Ryne was no longer a beneficiary "under any circumstance" and had "no interest in the trust whatsoever." Therefore, defendants argued, Ryne had no standing to participate in the proceedings. It appears that the trial court agreed with this argument. Its order stating that Ryne had no standing referenced the fact that Catherine had exercised the limited power of appointment and said, "as a result Ryne Brown is no longer a residuary beneficiary of the Brown Family Trust, and [] Ryne Brown does not have standing to participate in the selection or ratification of a corporate co-trustee of the Brown Family Trust."[6] However, the defendants were mistaken in their assumption that Ryne had no interest in the trust once Catherine exercised the limited power of appointment. Article

---

[6] The defendants argue on appeal that the issue of whether Ryne had standing is moot because Ryne "was permitted to fully participate in the proceedings." The record does not support this assertion.

Ten Section Three of the trust agreement provided:

> Our Trustee may also distribute to or for the benefit of the surviving Trustmaker *and our descendants* as much of the principal of the Family Trust as our Trustee, in its sole and absolute discretion, shall consider necessary or advisable for their education, health, maintenance, and support.

As we explained in our previous opinion, this Section "provides that the Trustee may make discretionary distributions of principal for the health, education, maintenance, and support of Mrs. Brown and her descendants (including Ryne Brown)[.]" ***Brown***, 2011 WL 441266, at *4. Although Ryne "is not a mandatory beneficiary of either the income or principal of the Brown Family Trust," he nonetheless has a "present interest [] at the discretion of the Trustee (for distributions of principal for his health, education, maintenance, and support)[.]" *Id.* at *5. In other words, he has a "present interest in the Brown Family Trust [] as a discretionary beneficiary of the principal." *Id.* The exercise of the limited power of appointment did nothing to alter or amend this portion of the trust agreement. We recognize that, given the nature of these proceedings, it may be unlikely that Catherine will ever approve any discretionary distributions of principal to Ryne. Nevertheless, he remains a "qualified beneficiary" of the trust. *See* Tenn. Code Ann. § 35-15-103(13) (defining a "Qualified beneficiary" as, among other things, "a beneficiary who, assuming the nonexercise of all powers of appointment and the nonoccurrence of any event not reasonably expected to occur, on the date the beneficiary's qualification is determined: (A) Is a distributee *or permissible distributee* of trust income *or principal*") (emphasis added).[7] This interest remains despite the exercise of the limited power of appointment.

In its discussion of the issue of standing, the trial court also referenced this Court's prior statement that Ryne was only a discretionary beneficiary before stating that "he cannot show that he suffered a loss." However, our previous opinion in this matter should not be construed as holding that a discretionary beneficiary has no standing to participate in proceedings to appoint a trustee. In our previous opinion, we did not hold that Ryne's status as a discretionary beneficiary meant that he lacked standing to participate in this matter. Our statements, upon which the defendants rely, were made in the context of considering Ryne's claims against Catherine for breach of fiduciary duty. The pertinent language bears repeating:

> [Ryne] also alleges that [Catherine] breached her fiduciary duties in her

---

[7] Because Ryne is a qualified beneficiary due to his present interest as a permissible distributee of trust principal, we need not decide whether he would be a qualified beneficiary due to his original designation as one who would receive trust assets at the death of Catherine.

role as trustee. These allegations relate to how the trust property was distributed, the extent of notice, disclosures, and accountings, *and the failure to maintain a corporate trustee*. The trial court determined that, pursuant to the terms of the trust agreement, [Ryne] did not prove that the trustee breached any duty that was owed to him. We agree with the trial court's assessment. We further note that, even if [Ryne] had proven a technical violation of the terms of the trust, because he was merely a discretionary beneficiary, he could not prove that he suffered any loss as a result of the acts of the trustee. Thus, where [Ryne] cannot prove any loss, we will not hold the trustee liable for an alleged technical violation. See *Oram v. Fitzpatrick*, No. 85-307-II, 1986 WL 6061, at *3 (Tenn. Ct. App. May 29, 1986). *This is particularly relevant because we remand for the appointment of a corporate trustee.* The trust agreement requires that a corporate trustee be appointed, and we cannot ignore this plain directive. However, the absence of a corporate trustee does not prove that [Catherine] breached her fiduciary duty as trustee with regards to [Ryne]. The trust provided that, as a Trustmaker, whenever [Catherine] served jointly with another trustee, she was entitled to act without the consent of the other trustee. Thus, any decisions that [Catherine] made while serving as sole trustee were within the discretion granted to her by the trust agreement. Furthermore, because [Ryne]'s interest in the trust was discretionary only, and could be divested at the sole discretion of [Catherine], he cannot show that he suffered any loss as a result of her actions as trustee. *See id.* Consequently, while we remand for the appointment of a corporate trustee, we affirm the trial court's judgment that no breach of fiduciary duty occurred. All other issues are pretermitted.

*Brown*, 2011 WL 441266, at *6 (emphasis added). Our finding that Ryne did not suffer a loss that would support a claim for breach of fiduciary duty does not mean that he did not have standing to participate in the proceedings on remand.

This brings us to the next issue – who was entitled to participate in the selection of a corporate co-trustee? Relevant to this issue, our previous opinion stated:

While it is clear that the trust agreement mandates the appointment of a replacement corporate trustee, it does not provide a procedure for doing so. . . . The trust agreement is [] silent as to how a corporate trustee should be appointed or who should have a role in deciding such matters. Nonetheless, because the trust agreement clearly mandates that a corporate Trustee be named as a replacement, we reverse this part of the trial court's judgment and remand to the trial court for the limited purpose of appointing a corporate

trustee in a manner consistent with the terms of the trust.

***Brown***, 2011 WL 441266, at *6.  On appeal, the defendants argue that, although the trust is silent as to who should appoint a corporate co-trustee, Catherine should be the one to make such an appointment because she was an original Trustmaker of the trust, and the trust agreement specifically grants her the right to remove a trustee for cause.[8]  Thus, the defendants argue that to permit anyone else to appoint a co-trustee "would likely be futile, as Catherine Brown could remove any successor trustee that she did not approve, and substitute them with her own appointee."  We find no support for this argument, however.  The trust agreement does provide that, after the death of one of the original Trustmakers, the surviving Trustmaker "may remove any Trustee for cause," but it goes on to state: "provided however, if the surviving nondisabled Trustmaker removes all the non-corporate Trustees, and in addition, the surviving nondisabled Trustmaker removes the corporate Trustee, a corporate Trustee shall be appointed by a court of competent jurisdiction to replace the corporate Trustee removed by the surviving nondisabled Trustmaker."

Ryne argues that the trust contemplates that a court will appoint a successor corporate trustee because it lists qualifications for "[a]ny corporate fiduciary named in this trust agreement or appointed by a court of competent jurisdiction."  However, this provision does not specifically state who should appoint a successor corporate trustee.  As we said before, the trust agreement is silent on this issue.[9]  We must therefore look for guidance beyond the terms of the trust.

In 2004, the Tennessee General Assembly adopted the Tennessee Uniform Trust Code ("TUTC"), Tenn. Code Ann. § 35-15-101, *et seq.*, as "a comprehensive code to govern trusts."  ***Tennessee Div. of United Daughters of the Confederacy v. Vanderbilt University***, 174 S.W.3d 98, 113 n.18 (Tenn. Ct. App. 2005).  It is "primarily a default statute."  **Tenn. Code Ann. § 35-15-105 cmt.**  In other words, the TUTC "provides numerous procedural rules on which a settlor may wish to rely, [but] the settlor is generally free to override these rules and to prescribe the conditions under which the trust is to be administered."  ***Id.***  So, the TUTC governs such things as "the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary" *except* as otherwise provided in the

---

[8]  We note that during the trial court proceedings prior to the first appeal, the defendants argued that the trust agreement did *not* vest the trustee with the duty or the power to name a successor corporate trustee.

[9]  As noted in the previous paragraph, the trust agreement provided that a court would appoint a corporate trustee to replace one *removed* by the surviving Trustmaker, if the surviving Trustmaker removed the corporate trustee and all non-corporate trustees.  However, that is not the situation we have here.

terms of the trust. **Tenn. Code Ann. § 35-15-105.**[10]

Because the trust agreement in this case is silent as to the procedure for appointing a successor corporate trustee, we look to the provisions of the TUTC. Tennessee Code Annotated section 35-15-704 provides, in relevant part:

> (c) A vacancy in a trusteeship of a noncharitable trust that is required to be filled must be filled in the following order of priority:
> (1) By a person designated in the terms of the trust to act as successor trustee;
> (2) By a person appointed by unanimous agreement of the qualified beneficiaries; or
> (3) By a person appointed by the court.

Here, there is no person designated in the terms of the trust to act as successor corporate co-trustee, so subsection (a) is inapplicable. Likewise, there is no unanimous agreement of the qualified beneficiaries because Ryne objected to the co-trustee proposed by the defendants. Therefore, subsection (b) does not apply, and we must move on to subsection (c). The corporate co-trustee must be "a person appointed by the court." **Tenn. Code Ann. § 35-15-704(c)(3).**

As for whether Ryne has standing to participate in the proceedings before the court, we conclude that his status as a qualified beneficiary gives him a sufficient interest in this matter so that he should be permitted to participate. Section 35-15-704(c) recognizes the interests of qualified beneficiaries to such an extent that it requires a unanimous agreement among all of them in order for a trustee to be appointed by beneficiaries rather than the court. Furthermore, in making the appointment of a trustee, the trial court is instructed to "consider the objectives and probable intention of the settlor, the promotion of the proper administration of the trust, *and the interests and wishes of the beneficiaries*." **Tenn. Code Ann. § 35-15-704 cmt.** (citing Restatement (Third) of Trusts § 34 cmt. f (Tentative Draft No. 2, approved 1999); Restatement (Second) of Trusts § 108 cmt. d (1959)) (emphasis added). Therefore, we conclude that the trial court erred in concluding that Ryne had no standing to participate in the proceedings for appointment of a corporate co-trustee.

---

[10] The terms of a trust may *not* prevail over some provisions of the TUTC, such as, for example, the requirements for creating a trust, certain duties of a trustee, certain powers of a court, etc. Subsection (b) of § 35-15-105 lists twelve items not subject to override in the terms of the trust.

## B. *The Trial Court Proceedings*

### 1. Qualifications for a Corporate Fiduciary

Ryne argues on appeal that the trial court erred in appointing a corporate co-trustee who failed to meet the qualifications listed in Article 15 Section 4 of the trust agreement. The defendants claim that this Section is inapplicable because, by its terms, it only applies to "[a]ny corporate fiduciary named in this trust agreement or appointed by a court," and they claim that the Forgey Trust Company was appointed by Catherine, not by the court. Because we have determined that the corporate co-trustee *must* be a person "appointed by the court," pursuant to Tennessee Code Annotated section 35-15-704(c), we find that the qualifications listed in Article 15 Section 4 do apply.[11] Consequently, the court was required to appoint a corporate co-trustee with "at least $200,000,000 in trust assets over which investment authority is held." The defendants do not claim that the Forgey Trust Company meets this qualification. Mr. Forgey testified before the trial court that the Forgey Trust Company had no other clients, beyond the Brown Family Trust, and that his corporation was formed for the sole purpose of serving the Brown Family Trust. Because the Forgey Trust Company failed to meet the qualifications for corporate trustees provided in the trust agreement, we reverse the trial court's appointment and remand for further proceedings to include an appointment, by the court, of a corporate co-trustee who meets the qualifications listed in the terms of the trust. In making such an appointment, the trial court should consider "the objectives and probable intention of the settlor, the promotion of the proper administration of the trust, and the interests and wishes of the beneficiaries." *See* **Tenn. Code Ann. § 35-15-704 cmt.** All other issues raised on appeal are pretermitted.

---

[11] The defendants do not argue that the qualifications are unenforceable. "Effect must be given to valid terms of a trust relative to the mode and manner of selecting trustees in the administration of the trust." 76 Am. Jur. 2d *Trusts* § 214.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby reversed and remanded for further proceedings. Costs of this appeal are taxed to the appellees, Catherine L. Brown, Trustee, Catherine L. Brown, individually, Cathleen Lucille Brown Sibley, Graham W. Sibley, Hilary E. Sibley Murphy, Aiden Patrick Murphy, a minor, Ashley Mills Sibley, and Alexander Mills Sibley, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.